LOEB & LOEB LLP
BERNARD R. GIVEN II (SBN 134718)
bgiven@loeb.com
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Proposed Attorneys for Debtor
and Debtor in Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>Shinda Upple dba Khalsa Ranch,<br><br>Debtor. | Case No.: 2026-14639<br><br>Chapter 11<br><br>**DECLARATION OF BERNARD R. GIVEN II IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING THE DEBTOR'S RETENTION OF LOEB & LOEB LLP AS COUNSEL TO THE DEBTOR, EFFECTIVE AS OF THE PETITION DATE**<br><br>DC No.: BRG-3<br>Date: December 2, 2026<br>Time: 9:30 a.m.<br>Courtroom: 11<br>Place: 2500 Tulare Street Suite 2501<br>Fresno, CA 93721<br><br>Judge: Hon. Jennifer E. Niemann |

I, Bernard R. Given II, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1. I am a partner of the firm of Loeb & Loeb LLP ("Loeb"), which maintains offices for the practice of law at 10100 Santa Monica Boulevard, Suite 2200, Los Angeles, California 90067. I am an attorney-at-law, duly admitted in the State of California. I submit this Declaration

in connection with the application of the Debtor and Debtor in Possession (the "**Debtor**") in the above-captioned case (the "**Chapter 11 Case**"), to retain Loeb as counsel. I further hereby provide the Disclosures required under sections 327(a) and 330 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2014-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of California (the "**Local Rules**"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## LOEB'S QUALIFICATIONS

2. The Debtor seeks to retain Loeb because of Loeb's recognized expertise and extensive experience and knowledge in the fields of corporate restructuring, creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code, as well as Loeb's expertise in the restructuring of companies in the agricultural industry. In addition, I have over thirty (30) years of experience in California bankruptcy cases.

3. Loeb began representing the Debtor in August of 2026, well before the date on which the petition for relief was filed in this case (the "**Petition Date**"), with respect to a potential chapter 11 restructuring. In preparing for its representation of the Debtor in this Chapter 11 Case, Loeb became familiar with the Debtor's business and operations and many potential legal issues that may arise in the context of this Chapter 11 Case. Loeb is both well qualified and uniquely able to represent the Debtor in this Chapter 11 Case in an efficient and timely manner.

## SERVICES TO BE PROVIDED

4. Subject to further order of the Court and consistent with that certain engagement letter dated August 4, 2026 (the "**Engagement Letter**"), a copy of which is annexed hereto as **Exhibit I**, the Debtor retained Loeb to advise the Debtor in and in connection with a potential chapter 11 bankruptcy. Accordingly, Loeb will render, without limitation, the following services:

(a) advising the Debtor with respect to his powers and duties as a debtor in possession in the continued management and operation of the businesses and properties;

(b) advising and consulting on the conduct of the Chapter 11 Case, including all of the legal and administrative requirements of operating in chapter 11;



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

(c) attending meetings and negotiating with representatives of creditors and other parties in interest;

(d) taking all necessary actions to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor and representing the Debtor in negotiations concerning litigation in which the Debtor is involved, including objections to claims filed against the Debtor's estate;

(e) preparing pleadings in connection with the Chapter 11 Case, including motions, applications, answers, orders, reports and other papers necessary or otherwise beneficial to the administration of the Debtor's estate;

(f) advising the Debtor in connection with any potential sale of assets or postpetition financing or investment by a third party;

(g) appearing before the Court and any appellate courts to represent the interests of the Debtor's estate;

(h) advising the Debtor regarding tax matters;

(i) taking any necessary action on behalf of the Debtor to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

(j) performing all other necessary legal services for the Debtor in connection with the prosecution and administration of the Chapter 11 Case, including: (i) analyzing leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens (if any); and (iii) advising on corporate and litigation matters.

## LOEB'S CONNECTIONS WITH THE DEBTOR

5. Loeb has established procedures (the "**Conflict Procedures**") to determine whether it has any relationships to parties that may cause it not to be disinterested or to hold or represent an interest adverse to the Debtor. Specifically, to implement such Conflict Procedures, Loeb took the following actions to identify (i) parties that may have connections to the Debtor and (ii) Loeb's relationship with such parties:

(a) Loeb requested and obtained from the Debtor extensive (but not necessarily comprehensive) lists of interested parties and creditors (the "**Potentially Interested Parties**").[1] The Potentially Interested Parties include, among others, the Debtor; affiliates of the Debtor; the Debtor's significant creditors; judges in the Bankruptcy Court for the Eastern District of California; and employees of the Office of the United States Trustee for the Eastern District

[1] Loeb will update the list of Potentially Interested Parties during the Chapter 11 Case, as appropriate. Moreover, Loeb is continuing to review its relationships with Potentially Interested Parties and will supplement this declaration to the extent a relationship should be disclosed.



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

of California, Fresno Division. A copy of the list of Potentially Interested Parties searched by Loeb is annexed hereto as **Exhibit II**.

(b) Loeb then compared each of the known Potentially Interested Parties to the names in an electronic database of current and former clients that Loeb maintains (the "**Client Database**"). The Client Database generally includes the name of each client of the firm, the name of each party who is or was known to be adverse to such client of the firm, certain parties that are related to the client, and the names of the Loeb partners who are or were primarily responsible for Loeb's representation of such clients.

(c) Known connections between former or current clients of Loeb and the Potentially Interested Parties were compiled for purposes of preparing this Declaration.

6. As a result of the Conflict Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, Loeb:

(a) is not a creditor of the Debtor (including by reason of unpaid fees for prepetition services), an equity security holder of the Debtor, or an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code;

(b) is not and has not been, within two (2) years before the date of the filing of the petition, a director, officer or employee of the Debtor; and

(c) does not have or represent an interest materially adverse to the interests of the Debtor's estate, or of any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or for any other reason.

7. Loeb is thus a "disinterested person" as that term is defined in section 101(14), as modified by section 1107(b), of the Bankruptcy Code. Loeb is qualified for retention as the Debtor's counsel.

## REPRESENTATION OF PARTIES-IN-INTEREST

8. Loeb and certain of its attorneys may have in the past represented, may currently represent and may in the future represent Potentially Interested Parties in connection with matters unrelated (except as otherwise disclosed herein) to the Debtor. More specifically, as a result of the Conflict Procedures, I have thus far ascertained that upon information and belief Loeb has the following potentially material connections with certain of the Potentially Interested Parties:

(a) Because of its broad-based general practice, Loeb: (i) has appeared in the past and may appear in the future in cases unrelated to this Chapter 11 Case where one or more of the Potentially Interested Parties may be involved; and



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

(ii) has represented in the past, currently represents and/or may represent in the future one or more of said parties or other Potentially Interested Parties, including creditors, in matters unrelated to the Debtor and the Chapter 11 Case;

(b) In addition, Loeb represents and has represented clients with interests adverse or potentially adverse to creditors or potential creditors of the Debtor;

(c) Loeb represents Bank of America, JP Morgan Chase, and Citigroup, which are each owed unsecured debt by the Debtor. The representations of each of these entities are unrelated to the Debtor and this Chapter 11 Case;

(d) Loeb represents Brighthouse Financial, Inc., the parent company of Brighthouse Life Insurance Company, in matters unrelated to the Debtor and this Chapter 11 Case;

(e) Loeb represents the Debtor's son-in-law, Sukhraj Pamma, in connection with his bankruptcy case; and

(f) Loeb previously represented entities partially owned by the Debtor, including Imperial Orchards LLC, PARS Group Inc. and Northwest Food Management Group Inc.

9. I believe that none of the representations or relationships recited above would give rise to a finding that Loeb is not disinterested or that it represents or holds an interest adverse to the Debtor. Further, Loeb does not believe any of the representations or relationships recited herein will prevent Loeb from representing the Debtor in any potential matters that will arise in the Debtor's Chapter 11 Case. Moreover, pursuant to section 327(c) of the Bankruptcy Code, Loeb is not disqualified from acting as the Debtor's counsel merely because it represents certain interested parties in matters unrelated to the Chapter 11 Case.

10. For the avoidance of doubt, Loeb will not commence a cause of action against any of the parties set forth above identified as being a current client of Loeb unless Loeb has an applicable waiver on file or first receives a waiver from such party allowing Loeb to commence such action.

11. Loeb has reviewed the relationship that its partners and employees have with the United States Trustee for the Eastern District of California (the "**U.S. Trustee**") and those known persons employed in the office of the U.S. Trustee, Fresno Division, and I do not believe that Loeb



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

has any material connections with the U.S. Trustee or any person employed in the office of the U.S. Trustee.

## LOEB'S COMPENSATION

12. Loeb is seeking to be retained by the Debtor as his counsel and intends to apply to the Court for allowance of compensation and reimbursement of out-of-pocket expenses incurred after the Petition Date in connection with the Chapter 11 Case, subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines of the U.S. Trustee, and further orders of this Court. In connection with its retention, Loeb will bill at hourly rates which are currently discounted to $1,100 for partners in this matter. All other attorneys and paraprofessionals will bill at their standard hourly rates. The hourly rates and corresponding rate structure to be utilized by Loeb in the Chapter 11 Case are less than or equal to Loeb's hourly rates and corresponding rate structure for other restructuring matters, as well as similar corporate, litigation and other matters whether in court or otherwise, regardless of whether a fee application is required.

13. The following Loeb professionals presently are expected to have primary responsibility for providing services to the Debtor: Bernard R. Given II and Bethany D. Simmons. In addition, as necessary, Loeb associates and paraprofessionals (at lower rates) will provide services to the Debtor.

14. Loeb's hourly rates are subject to periodic increase (typically on or about February 1st of each year) in the normal course of Loeb's business. As noted above, the hourly rates for partners that will be charged in the Chapter 11 Case are less than Loeb's standard hourly rates. These rates are set at a level designed to fairly compensate Loeb for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is Loeb's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case or cases. The expenses charged to clients include, among other things, telecopier charges, mail and express mail charges, special or hand delivery charges, document processing and photocopying charges, travel expenses, expenses for "working meals" and computerized research and

transcription costs. Loeb makes no profit from these expenses. Loeb believes that it is appropriate to charge these expenses to the clients incurring them rather than to increase its hourly rates and thereby spread such expenses among all clients.

15. This declaration is intended to comply with Bankruptcy Rule 2016(b). Loeb intends to apply to this Court for compensation for professional services rendered in connection with the Chapter 11 Case in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, Local Rules, and the administrative and other orders entered by this Court.

16. Loeb was paid a total of $100,000 by or on behalf of the Debtor for services rendered on the Debtor's behalf or toward Loeb retainer funds, in the twelve months prior to the Petition Date. Loeb deposited these funds on August 5, 2026. The retainer has not been fully exhausted.

17. At no point during the 90-day period prior to the Petition Date did Loeb receive any payment on account of an antecedent debt. Loeb currently holds a $61,239.50 retainer on behalf of the Debtor (*i.e.,* the remaining unapplied amount for the work performed).

18. As of the Petition Date, there were no fees or expenses due to Loeb from the Debtor. If any amounts, after application of all invoices and retainers, are owed to Loeb as of the Petition Date, Loeb will waive any claim relating thereto upon entry of a final order approving Loeb's engagement.

19. No promises have been received by Loeb or by any partner, associate or other attorney thereof as to compensation in connection with the Chapter 11 Case other than in accordance with the provisions of the Bankruptcy Code.

20. Loeb further states that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners and associates and other attorneys of Loeb, or (b) any compensation another person or party has received or may receive.

21. Except as disclosed herein, neither I, Loeb, nor any partner, associate or other attorney or paraprofessional thereof, insofar as I have been able to ascertain and subject to disclosures herein, represents any interest adverse to the Debtor or his estate in the matters

regarding which Loeb is to be engaged. I believe Loeb is a "disinterested person" as that term is defined in section 101(14), as modified by section 1107(b), of the Bankruptcy Code. Moreover, I believe none of the representations or relationships recited herein would give rise to a finding that Loeb represents or holds an interest adverse to the Debtor.

22. By reason of the foregoing, I believe Loeb is eligible for employment and retention by the Debtor pursuant to sections 327(a), 330 and 1107(b) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

23. Except as set forth above, I have no connection with the Debtor, creditors, or any party in interest, their respective attorneys, accountants, or the U.S. Trustee, or any employee of the U.S. Trustee.

Dated: November 2, 2026

By: */s/* Bernard R. Given II
Bernard R. Given II



**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

# EXHIBIT I

## Engagement Letter



Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

LOEB & LOEB LLP

BERNARD R. GIVEN II
Partner

10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067

**Direct** +1 310-282-2235
**Main** +1 310-282-2000
**Fax** +1 310-282-2200
bgiven@loeb.com

**Via Email shindaupple@yahoo.com**
**and U.S. Mail**

August 3, 2026

Mr. Shinda Upple
4400 Country Club Drive, House #3
Bakersfield, CA 93306

Dear Shinda:

We are pleased that you have chosen Loeb & Loeb LLP (the "Firm" or "Loeb") to represent YOU ("you" or "your"). We believe it is helpful at the outset of our relationship to set forth clearly the terms of our engagement. Accordingly, this letter, including the attached Terms of Engagement ("Terms of Engagement" ) (collectively, "Agreement"), sets forth the terms and conditions of our forthcoming representation, which remain subject to our standard internal management approval process.

1. Scope of Work

Our responsibilities on your behalf in connection with this engagement shall be limited to representing you in a Chapter 11 Bankruptcy Case as the Debtor. We will provide these legal services for your benefit exclusively, and not for the benefit of, or to otherwise advise or counsel, any persons or entities who are not parties to this Agreement. We will endeavor to keep you reasonably informed of the progress of our work on your behalf and to respond to your inquiries regarding that work.

2. Fees

I will be principally responsible for overseeing the Firm's work on this matter. The Firm's charges for attorneys' fees, disbursements and other expenses are addressed in detail in the Terms of Engagement. Our attorneys' fees are based on hourly billing rates. My current discounted billing rate is $1,100 per hour. Bethany Simmons will also work on this matter. Her discounted current hourly rate is $1,100 per hour. We may also involve other Firm lawyers and paralegals as we move forward, to the extent we deem necessary or appropriate in the circumstances.

3. Advance Fee Deposit

As a matter of Firm policy, we require clients to make or pay an advance fee deposit or retainer (the "Advance Fee Deposit"). Based upon that policy, we request that you make an Advance Fee Deposit in the sum of $100,000.00. The Advance Fee Deposit will be maintained by the Firm in a trust account. You expressly authorize the Firm to draw upon and apply the Advance

LOEB & LOEB LLP



Fee Deposit to attorneys' fees and costs as they are earned or incurred on your behalf during the course of our representation.

The Firm's invoices will reflect our application of any part of the Advance Fee Deposit. After the Advance Fee Deposit is exhausted, you will continue to be billed for additional attorneys' fees and costs, and the Firm expects to receive timely payment, as set forth in this Engagement Agreement.

The Firm will refund to you any unearned or unused portion of the Advance Fee Deposit or any additional advance fee deposit, following the conclusion of our representation.

4. Agreement

We ask that you review this Agreement, including section 12 of the Terms of Engagement, entitled "Arbitration," and section 14 of the Terms of Engagement, entitled "Future Conflicts of Interests," carefully. And we encourage you to consult with other, independent counsel regarding the terms and subject matter of this Agreement. If this Agreement conforms with your understanding of our engagement and our respective responsibilities, we ask that you please so indicate by returning to me a signed copy of this letter, along with the required Advance Fee Deposit. Of course, if you ever have any questions or concerns about this Agreement or our work in connection with this Agreement, please do not hesitate to contact me.

I look forward to working with you. Thank you again for choosing Loeb & Loeb LLP.

Sincerely,

Bernard R. Given II
Partner

THE UNDERSIGNED HAS READ AND UNDERSTANDS THIS AGREEMENT, INCLUDING THE ATTACHED TERMS OF ENGAGEMENT, And EXPRESSLY AGREES TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, which the undersigned acknowledges provides for BINDING ARBITRATION in the event of any dispute arising out of this agreement, as provided therein.

By:______________________________
Shinda Upple

Date: 8/4/26

**Loeb & Loeb LLP**
**Terms of Engagement**

The following terms and conditions apply to all services provided to you by Loeb & Loeb LLP. The expressions "we", "us", "our," "Loeb" and the "Firm" refer to Loeb & Loeb LLP. The expressions "you" and "your" refer to you, our client(s). This document together with our letter attaching this document, constitutes our agreement with respect to our engagement to provide legal services ("Agreement"). We urge you to review the Agreement carefully, to consult with independent counsel regarding the terms of the Agreement, and to communicate with us and/or your independent counsel if you have any questions.

1. Scope of Services.

Our responsibilities on your behalf in connection with this engagement are as specified in the accompanying letter. We will represent you as a Debtor in your Chapter 11 Bankruptcy Case. We will not be representing any of your parents, subsidiaries, related, affiliated or associated persons or entities, or any of your or their respective officers, directors, investors, agents, partners, members, managers, family members, or employees in connection with this work.

Thereafter, we will also perform such additional legal services as you may request and you and the Firm may expressly agree upon from time to time, in writing. The Firm's agreement to expand the scope of its representation, as it is defined above, will be subject to, among other things, such conflicts checks, waivers, advance fee deposits, approvals, and other arrangements or considerations that the Firm may, in its professional judgment, deem necessary or appropriate in the circumstances.

Should you and the Firm expressly agree and confirm in writing that the Firm will provide additional legal services, this confirms that those additional legal services will be subject to, and governed by, the terms of this Agreement, unless we agree in writing to different terms.

2. Fees and Billing Rates.

The Firm's billing rates are adjusted periodically, usually at the beginning of the calendar year, and any such adjustment is applicable to the legal services performed after those new rates take effect. You will receive notice of any billing rate adjustments on our invoices, which will state the hourly billing rate of each timekeeper during the applicable billing period. You agree that the Firm shall not be required to provide you with any additional or separate notice of any billing rate adjustments. If you have any questions regarding any billing rate adjustments, please contact the partner identified above as primarily responsible for this engagement.

While parts of your work may be assigned to other professionals in the Firm, and the assistance of other Firm lawyers utilized where specialized assistance is needed, we expect that the partner identified as primarily responsible for this engagement will be responsible to you for the entire engagement, and available to discuss staffing matters with you, should you have any questions in that regard. Our practice is to assign tasks among lawyers, paraprofessionals, legal assistants and other members of our staff in such a way as to endeavor to produce quality work at a reasonable cost to you, taking account of the nature of the matter or specific project.

You may from time to time request and receive an estimate of the fees and costs that we anticipate will arise from our legal services under this Agreement. Such estimates are our preliminary calculation of anticipated fees and costs, based on the facts then available, as well as a projection of the time we think will be needed to complete certain anticipated tasks. However, your actual fees and costs may vary significantly from estimates provided, due to circumstances and variables that are difficult to predict or beyond our control. An estimate is not a fixed fee or fee cap commitment, and the fees and costs incurred in connection with this engagement will be determined in accordance with the provisions of this Agreement.

3. Expenses Incurred and Other Charges.

In addition to our fees, you agree to reimburse us for all expenses incurred on your behalf, including, for example, travel costs, air freight, commercial messengers, computer research terminal time and printing costs, and secretarial and word processing overtime if and when dictated by your needs. If we are asked to incur any expense on your behalf in excess of $2,000, we will ordinarily ask you to prepay that expense. In addition, we will ordinarily expect you to pay, directly, the fees and expenses of any third parties, such as consultants, appraisers, expert witnesses and court reporters, whom we engage with respect to your matter(s). You understand and agree that you shall be directly and solely responsible for the payment of all such charges, whether we prepay them or not.

4. Invoices and Billing Practices.

We will send you an invoice, typically monthly, detailing all of the fees, costs and expenses incurred on your behalf during the applicable billing period. Payment of that invoice is due upon receipt. In the event payment is not timely received, we reserve the right to charge interest at the rate of 1% per month. Our invoices will give you sufficient detail to enable you to determine who performed legal services on your behalf, the amount of time expended in performing those services, and the nature of the legal services performed. It is our normal practice to combine all tasks for each timekeeper on any given date into one billing entry and to provide only a general description of those activities without identifying how much time was spent on each particular task. You consent to this practice.

We prefer to receive payment by wire or ACH. Wire and ACH instructions will be included on each of our invoices and are, of course, available upon request.

We expect prompt payment of our invoices. If for any reason you believe that your fees and expenses are mounting too rapidly, please contact us immediately so that we may discuss and evaluate your options. If we do not hear from you in this regard, we will assume that you approve of the overall level of our activity and of our invoices.

It is the Firm's policy that, subject to our professional responsibilities or any required judicial or other approvals, we retain the right to discontinue performing legal services for you if you become more than sixty (60) days delinquent in the payment of your bills. But you understand and agree that the Firm does not waive any of the Firm's rights or remedies in this regard, if it elects, in its sole discretion, not to strictly enforce this policy.

5. Responding to Subpoenas and Other Requests for Information or Testimony.

If the Firm is required to respond to or defend claims made or threatened by any third party against the Firm related to your conduct or activity (and not the Firm's conduct, except to the extent the Firm was acting within the scope of its engagement, on your behalf), or otherwise is required to respond to a subpoena or other demand seeking documents or testimony relating to the matters and/or legal services the Firm performed for you, we will reasonably promptly notify you of such claim or demand, endeavor to communicate with you regarding any attorney work product or attorney-client privilege issues, coordinate with you, to the extent possible, with respect to any of your stated objections to the Subpoena or any part thereof, as well as the Firm's response to the Subpoena, and provide you with our expectations regarding the scope of work we anticipate will be required to prepare and/or make the Firm's response to the Subpoena. You agree that, even in the event the Firm no longer represents you, you will promptly pay to the Firm its reasonable attorneys' fees (including the time value of all attorneys and other professionals in our Firm who perform legal services in connection with such claims or demands, computed at their normal billing rates) and all expenses and costs incurred, with respect to defending against any claims made or threatened against the Firm, collecting, reviewing and producing documents, preparing responses and objections, engaging in necessary motion practice, and preparing for and appearing at any depositions or other proceedings.

6. General Responsibilities of Attorney and Client.

We will provide the above-described legal services for your benefit exclusively, and not for the benefit of, or to advise, any nonparties to this Agreement. We will endeavor to keep you reasonably informed of the progress of our work and to respond to your inquiries.

You agree to fully cooperate with us in our work, by, among other things, providing us with complete and correct factual information, making yourself reasonably available to us for consultation and interviews, giving us full and candid disclosure of all relevant facts, providing us promptly with all relevant documents in your possession that we may request, making any business decisions and determinations as may be appropriate to facilitate our performance of legal services, and remitting payment of our invoices in accordance with the procedures described herein.

We may seek to use legal technology, including artificial intelligence (AI) platforms or tools, to enhance our representation and promote efficiencies. To the extent we use any AI platforms or tools as part of our work on your behalf, that use will be limited to tasks appropriate to that technology's capabilities; it will take account of, and be consistent with, our professional responsibilities, including the duty of confidentiality; and it will support, but not replace, the diligence, expertise and judgment of our professionals. Should you have any questions or concerns in this regard, please feel free to contact the undersigned.

To the extent litigation has been threatened or is reasonably likely, the law requires you to preserve all relevant information and documents and to suspend any retention or destruction policies that may be in place. You should consult with us if you have any uncertainty or questions regarding your obligations in this regard.

As many jurisdictions criminalize the evasion of tax and its facilitation, as a condition of our undertaking this engagement, you represent to us that you will not request or otherwise have the Firm or any third party involved in the engagement take any action, or desist from taking any action, to facilitate tax evasion.

The Firm does not, and cannot, guarantee any outcome in any matter, and nothing in this Agreement or in our communications with you is, or should be deemed to be, a promise or guarantee as to any particular outcome or result.

7. Exclusion of Insurance Services.

The scope of our services does not include an evaluation of your insurance coverage, unless we expressly and separately agree in writing to perform such an evaluation. We recommend that you carefully review your insurance coverages to determine whether any of the losses or expenses (including our attorneys' fees) which you have incurred, or will incur with respect to this matter, may be reimbursable by your insurance. In this regard, you should consult with your insurance brokers or your own risk management employees, and with insurance coverage counsel, as to your potential insurance coverages and the notice requirements potentially applicable to those coverages.

8. Termination of Representation.

The attorney-client relationship is one of mutual trust and confidence, and you are, of course, free to terminate our relationship at any time. We are also free to terminate our relationship with you, and should that unlikely event occur, we will do so in a manner that complies with applicable law, court rules and the Rules of Professional Conduct of the State Bar of California. Those rules permit us to withdraw as your counsel if, among other reasons, your conduct renders it unreasonably difficult for us to carry out our representation effectively, you fail to pay our fees and costs in accordance with this Agreement, or you fail to pay the fees and costs of third parties we engage on your behalf.

Our representation will terminate as a matter of course and without the need for further written communication or notification, no later than upon the completion of the scope of work defined above, or the issuance of our final invoice in connection with that work. If, notwithstanding that termination, you request and we subsequently agree in writing to perform additional legal services, then such legal services will be governed by the terms of this letter, unless we agree in writing to other terms. The fact that we may, as a courtesy, inform you from time to time of developments in the law which may be of interest to you, by newsletter or otherwise, should not be understood as a revival of an attorney-client relationship.

9. No Calendaring, Tracking or Collections.

You acknowledge that certain agreements that you enter into, along with certain statutory or legal requirements to which you may be subject, may require the giving of notice, or updated notice, the exercising of rights (e.g., options), the making of payments by a specified time, or the making of other decisions within certain time periods (e.g., exercising any audit rights, granting or not granting an approval or consent, filing UCC Continuation Statements, filing legal actions

or replying to legal claims). You understand and agree that we will not be responsible for determining or monitoring those time periods, or any dates or calendar items, or tracking or ensuring your compliance with them. You further understand and agree that we are not responsible for collecting monies due to you under any of your agreements. We may assist you, at your request, in following up on billing requests or other deadlines, but any such assistance will be provided to you as a courtesy, and shall not impose on us, or otherwise constitute an acceptance of, any continuing obligations by the Firm. Notwithstanding the foregoing, we will, of course, track the deadlines respecting any litigation in which we are your counsel of record.

10. <u>File Retention Policy.</u>

You understand and agree that any materials left with us after our engagement ends may be retained or destroyed after seven years, in our sole discretion, without notice to you, unless you have previously directed us in writing to retain such materials. Notwithstanding the foregoing, but preserving any rights that we may have regarding the retention or non-retention of such materials, we will preserve any original wills, deeds, contracts, promissory notes or other similar documents unless you instruct us otherwise in writing, for a period of no less than ten years, or else return them to you within that time.

You agree that our work product, including internal emails, internal drafts, notes, memoranda and mental impressions, belongs to us as lawyers and is not part of your client file. We reserve the right to make, at our expense, and retain, copies of all documents generated or received by us in the course of our representation, and to charge you for the cost of storage of your client files, where the volume of such files is substantial.

In the event that, during or following the conclusion of our representation, you request that we provide you with a copy of some or all of the materials in your client file (either hard copy or electronic), or we are required by law to do so, you agree to pay us for all time charges incurred in performing a corresponding search and review for privilege and responsiveness, and for all internal and/or outside vendor costs and copying costs that we incur in responding to such a request or requirement.

11. <u>Use of Name in Marketing Materials.</u>

You understand and agree that we may make public reference to any matters in which our representation is a matter of public record, or as to which you have consented to such reference, provided doing so is consistent with our ethical responsibilities. Such references may be made, without limitation, on our Firm website, our attorneys' biographies, Firm brochures, matter lists and other promotional materials.

12. <u>Arbitration.</u>

We look forward to a long and mutually productive relationship with you; but if you become dissatisfied with our work for any reason, we encourage you to bring that to our attention immediately. We believe that most issues can be resolved, informally, through good faith discussion. But if we cannot, for any reason, resolve a dispute between us in that manner, we

believe that binding arbitration is an expeditious, cost-effective and mutually desirable means of dispute resolution.

(a) The Arbitration Process.

Arbitration is a dispute resolution process in which the parties submit their dispute to an arbitrator for a binding decision. Arbitrations are in many ways similar to, but in other ways different from, a court proceeding. In an arbitration, there is no right to a trial by jury, and the arbitrator's legal and factual determinations are generally not subject to judicial or other review. The rules of evidence and procedure are often less formal and rigid in an arbitration, and the arbitrator may decide, as a matter of discretion, to limit the extent of discovery and the number of depositions. Arbitration usually results in a decision more quickly than a court proceeding, and the attorneys' fees and other costs are usually lower for both sides. The costs of the arbitrator are typically split equally between the parties.

(b) Agreement to Arbitrate Disputes.

You and we agree that any dispute, claim or controversy arising out of or related to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, our relationship with you, or our performance of legal services, whether those services are the subject of this Agreement or otherwise, shall be resolved solely by binding arbitration administered by JAMS, in Los Angeles, California, before one arbitrator who shall be a retired California state or California federal judge or magistrate ("Retired Judge"), pursuant to JAMS' Comprehensive Arbitration Rules and Procedures as then in effect. (JAMS' Comprehensive Arbitration Rules and Procedures, currently in effect, are available on JAMS' website, located at www.jamsadr.com, but if you would like a hard copy, we would be pleased to provide you with one, upon your written request.)

Notwithstanding the foregoing, any party to this Agreement may elect, in that party's absolute discretion, to have a dispute subject to arbitration under this Agreement heard and determined by three (3) arbitrators, provided the amount at issue exceeds $1,500,000. If such a qualifying election is made, each side shall select one person to act as arbitrator within fifteen (15) business days of that election, and the two arbitrators so selected shall then have fifteen (15) business days to select the third arbitrator. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator within the allotted time, the third arbitrator shall be appointed by JAMS in accordance with its rules then in effect. All arbitrators appointed in accordance with this Agreement shall serve as neutral, independent and impartial arbitrators, and shall be subject to all applicable disclosure rules and requirements.

The disputes subject to binding arbitration shall include, without limitation, disputes regarding or alleging negligence, malpractice, breach of fiduciary duty, fraud, breach of contract, any claim based upon a statute, as well as any dispute as to attorneys' fees, the arbitrability of any such claims, the jurisdiction of JAMS or the arbitrator(s), or the enforceability of this agreement to arbitrate. Arbitration will be the sole means of resolving any such disputes, and both parties waive their rights to resolve disputes by jury trial or other court proceedings. The arbitrator(s) shall not be authorized to reform, modify or materially change this Agreement or other

agreements entered into between the parties, and the arbitrator(s) shall apply and enforce the governing law, including applicable statutes of limitation, as set forth below.

We encourage you to discuss the advisability of this agreement to arbitrate with other counsel, and any of your other advisors, and to ask us or them any questions that you may have.

(c) Jury Waiver/Dispute Resolution.

By agreeing to arbitrate any and all disputes between us as set forth above, you acknowledge that you are waiving your legal right to have such disputes heard and determined by a judge or jury in a court of law.

Any award issued by the arbitrator(s) shall be final and binding, and judgment thereon may be entered in any court of competent jurisdiction. An arbitration award may be reviewed by a trial court, but usually on narrower grounds than those available in an appeal of a trial court judgment to an appellate court. If an arbitration award is confirmed by a reviewing trial court, the resulting court judgment may thereafter be enforced in the same manner as a judgment in a civil action.

If you have any questions regarding the significance of your decision to waive your right to a jury trial, you should consult with an attorney who is independent of this law firm.

(d) Arbitration Confidentiality.

The arbitration proceedings and award shall be kept strictly confidential between us and, except for our own representatives on a need-to-know basis, will not be disclosed to any other person or entity, unless disclosure is necessary for the preparation and conduct of any arbitration hearing on the merits, or in a judicially-filed application for prejudgment remedies, or in any hearing to confirm, correct or vacate the arbitrator's award in a court of competent jurisdiction, or in proceedings to enforce a judgment based upon a confirmed or corrected award, or as otherwise may be required by law.

(e) Arbitral Jurisdiction.

The parties acknowledge that this Agreement is a contract involving interstate commerce and that, notwithstanding the "Governing Law" provision of this Agreement, any arbitration under the terms of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C., Secs. 1-16). California's substantive law shall govern the underlying disputes to be arbitrated. You and we agree that the arbitrator, not any federal or state court judge, shall have the exclusive jurisdiction to resolve any and all disputes regarding the arbitrator's jurisdiction and the interpretation, applicability, enforceability or formation of this binding agreement to arbitrate, including but not limited to determining which claims are subject to arbitration, or any contention that all or any part of this Agreement is unenforceable, voidable or void.

LOEB & LOEB LLP



(f) Attorneys' Fees Arbitration.

Notwithstanding the foregoing, you have the right to request arbitration of any dispute regarding our attorneys' fees or costs before an arbitrator or panel of arbitrators selected by a local bar association or the California State Bar Association ("Fee Arbitration"). If there is an unresolved dispute as to attorneys' fees or costs, we will give you written notice of your right to Fee Arbitration.

Fee Arbitration is non-binding, unless, after the fee dispute arises, we both agree in writing to binding fee arbitration prior to the Fee Arbitration hearing. If we both timely agree that a Fee Arbitration will be binding, it is final when rendered, and neither of us may request a new trial in court.

If you decline to pursue Fee Arbitration, either of us is entitled to pursue binding arbitration as set forth above. If you accept Fee Arbitration and either of us refuses to accept the award issued in connection with the Fee Arbitration as a binding award, then either of us is entitled to pursue binding arbitration as set forth above.

13. Governing Law.

This Agreement, and its performance and enforcement, shall be governed by the laws of the State of California without reference to conflict of law rules.

14. Future Conflicts of Interest.

We represent many other clients nationally and internationally with respect to a wide variety of legal subjects. Given this, without a binding conflicts waiver, conflicts of interest may arise that could deprive you or our other clients of the right to select the Firm as their legal counsel. A summary of our current practice areas and some of the industries in which we are active may be found on our website at www.loeb.com.

As an integral part of the engagement, you agree that the Firm may represent other persons and entities in future matters. In particular, you agree that while we are representing you in active, pending matters, we may represent other clients in matters adverse to you (or which may be adverse to any of your subsidiaries or affiliates), provided that those adverse matters (a) are not substantially related to active matters we are working on for you, (b) do not involve situations where we have obtained confidential information from you that is material to the adverse matter(s), and (c) are not litigations or arbitrations in which we are adverse to you. Additionally, if our representation of you is terminated, we may thereafter represent other clients with interests adverse to yours (or any of your subsidiaries or affiliates), even in litigation, provided the representation does not involve confidential information which we obtained from you that is material to those adverse matters.

By executing this Agreement, you agree to waive any conflicts of interest that may arise in any of the aforementioned situations (the "Permitted Adverse Representations"). If for any reason your consent to, and waiver of, potential conflicts is not effective in the circumstances, you consent to our withdrawal from representing you, provided doing so is not otherwise

impermissible under the applicable professional rules. You also agree that you will not, for yourself or any other entity or person, assert that (a) the Firm's representation of you or any subsidiary or affiliate in any past, present, or future matter, or (b) the Firm's actual, or possible, possession of confidential information belonging to you or any subsidiary or affiliate, is a basis to disqualify the Firm from representing another client in any Permitted Adverse Representations. You further agree that Permitted Adverse Representations do not constitute a breach of any duty that the Firm owes to you (or any or your subsidiaries or affiliates).

Although you may revoke this waiver as to future Permitted Adverse Representations at any time, you acknowledge and agree that any such revocation will be prospective and will not affect any matters that we have undertaken prior to our receipt of your notice of that revocation.

In deciding whether to agree to this waiver of future conflicts of interest, you should consider whether there is a significant risk that our representation of other clients in Permitted Adverse Representations may materially limit our representation of you in connection with the scope of work defined above. We do not believe it will materially limit that representation because (a) no Firm lawyers representing you in connection with this Agreement will also represent other clients in Permitted Adverse Representations, (b) we will not disclose any confidential information that we obtain from you to our other clients in Permitted Adverse Representations, and (c) we will establish appropriate ethical walls. You acknowledge we have afforded you the opportunity to raise with independent counsel, to your full satisfaction, any questions you may have regarding the terms of this waiver of future conflicts.

15. <u>Privileged Communications with Firm Counsel.</u>

The Firm has internal ethics and professional responsibility counsel who advise Firm attorneys generally regarding their ethical, professional and legal duties to clients and third parties. From time to time, the attorneys and professionals working on your matter may have occasion to consult with these lawyers, or with outside counsel engaged to represent the Firm. The Firm regards and treats such communications as confidential and attorney-client privileged in favor of the Firm.

As a condition of this engagement, you consent to such communications. And to the extent such communications may be deemed to create a conflict of interest between the Firm and you, you hereby agree to prospectively waive that conflict. Finally you acknowledge and agree that all such consultations are protected by the Firm's attorney-client privilege, and you waive any right to discovery of these communications. You also agree that these communications are the property of the Firm and will not be regarded as part of your file for purposes of the aforementioned File Retention Policy.

16. <u>Entire Agreement.</u>

This Agreement represents the entire agreement between you and our Firm regarding our representation, and it supersedes any prior agreements or understandings.

17. <u>No Modification Except by Signed Writing.</u>

No provision of this Agreement can be waived, modified, amended, or supplemented except in a writing that is signed by an authorized representative of all parties to this Agreement.

# EXHIBIT II

## Potentially Interested Parties

## DEBTOR

Shinda Upple

## OFFICE OF THE UNITED STATES TRUSTEE FOR REGION 17, FRESNO

Peter C. Anderson
Gregory Powell

## E.D. CALIFORNIA BANKRUPTCY JUDGES

Judge Ronald H. Sargis
Chief Judge Frederick E. Clement
Judge Christopher D. Jaime
Judge Rene Lastreto II
Judge Jennifer E. Niemann
Judge Christopher Klein

## AFFILIATES
**(No admission re any status, existence, validity or enforceability of any claims or interests.)**

Upple Store Inc.
Upple Brothers Inc.
PARS Group
Golden Valley Orchards LLC
Imperial Orchards LLC
Northwest Food Management
USC Inc.
CSU Inc.

## CREDITORS, POTENTIAL CLAIMANTS AND OTHER PARTIES
**(No admission re any status, existence, validity or enforceability of any claims, nor any other admission.)**

### Secured Creditors

Ag West Farm Credit
Brighthouse Life Insurance Company
Citizens Business Bank
DFS Finance
Farm Credit West, PCA- Bakersfield
Karpe Real Estate Center
Kundert Family Farms, L.P.
Metlife Real Estate Lending LLC
Valley Strong Bank

### Top 20 Unsecured Creditors

ATI Machinery
Bank Of America Credit Card
Bianka Ag Services
Citi Costco
CNH Industrial Accounts
Darling & Wilson
Direct AG Sales

FBN Finnce LLC
Fertilizer Depot
Gar Bennett, LLC
Hansonbridgett LLP
Hocking Denton Palmquist
John Deere Financial
JP Morgan Chase Bank
Midland Tractor
Nutrien Ag Solutions Inc, F/K/A Crop Production Services Inc
Pacific Irrigation
PG&E
Rabobank N.A.
Sharda Global Chemicals